MEAD *v.* RANDALL.

1. PLEADING — JOINDER OF COUNTS—ALIENATION OF WIFE'S AF-
FECTIONS.

A count for alienating a wife's affections may be joined with
a count for seducing and debauching her, thereby causing the
alienation of her affections.

2. HUSBAND AND WIFE—ALIENATION OF AFFECTIONS—PROOF OF
COHABITATION—ADMISSIBILITY.

Proof that the parties lived together as husband and wife
is admissible in an action by a husband for the alienation of
his wife's affections, for the purpose of showing their har-
monious relations prior to the alleged alienation, where the
fact of the marriage has been established by other evidence.

3. SAME—ADMISSIONS—HOW SHOWN.

The debauching by the defendant of the wife of plaintiff
in such action may be shown by admissions contained in let-
ters written by the defendant to the wife.

4. SAME—LETTERS—PROOF OF RECEIPT.

In an action for the alienation of a wife's affections, post-
marked letters in defendant's handwriting, addressed to
plaintiff's wife at her street and number, and showing on
their face that they belong to a connected correspondence,
are admissible in evidence upon proof that defendant, in the
presence of a witness, admitted having written them, and pro-
duced letters from the wife, insisting that they constituted
simply a friendly correspondence, although their receipt by
the wife is not otherwise shown.

5. SAME—PLEADINGS IN DIVORCE SUIT—ADMISSIBILITY.

While the fact that plaintiff in such action has procured
a divorce may be shown for the purpose of negativing a claim
that there had been a reconciliation between the husband and
wife, the bill of complaint in the divorce proceedings is inad-
missible.

6. TRIAL—REQUEST FOR SPECIAL FINDING—MODIFICATION.

In an action for the alienation of a wife's affections, de-
fendant requested a special finding whether defendant and
plaintiff's wife were ever in plaintiff's house together "when
no one else was present." While the evidence did not directly

show that no other person was present upon occasions testified to, the testimony all related to clandestine meetings. The court struck out the qualifying words. *Held,* that, if the request was to be submitted at all, it should have been in the form as presented by counsel.

Error to Wayne; Donovan, J. Submitted October 7, 1896. Decided December 24, 1896.

Case by Philip J. Mead against Joel M. Randall for the alienation of the affections of plaintiff's wife. From a judgment for plaintiff, defendant brings error. Reversed.

*C. A. Howell* (*George Gartner* and *Andrew Howell,* of counsel), for appellant.

*James H. McDonald* (*Frank P. Guise,* of counsel), for appellee.

MONTGOMERY, J. Plaintiff sued for alienation of his wife's affections. The declaration contained three counts. The first alleged that defendant alienated and destroyed the wife's affections for her husband; the second averred that defendant assaulted and debauched her, whereby her affections were alienated, etc.; the third, that plaintiff's wife was seduced and debauched, whereby her affections were alienated, etc. At the opening of the trial, defendant asked that plaintiff be required to elect upon which count he would proceed, and, at the close of the testimony, asked instructions—*First,* that plaintiff was not entitled to recover under the first count; *second,* that he was not entitled to recover under the second count; *third,* that he was not entitled to recover under the third count. These requests were refused, and the jury gave a general verdict for the plaintiff, from which the defendant appeals.

1. In support of the contention that the plaintiff should have been required to elect between his various counts, defendant's counsel claim that the wrong of alienating the wife's affections and the adulterous intercourse are

distinct causes of action, citing the case of *Perry* v. *Lovejoy*, 49 Mich. 529. The question presented in that case was whether, in an action for alienating the wife's affections, proof of criminal conversation was admissible, where the declaration contained no averment of adulterous intercourse. It was held that such evidence was not admissible, and the language employed by Mr. Justice GRAVES must be understood as intended to be applied to the case in hand. It was said: "The present is a recognized action, wholly distinct from one for criminal conversation;" and that, "whether the form of action is case or trespass, the criminal intercourse must be substantially averred." This language is strictly accurate. Before a plaintiff can be permitted to prove adulterous intercourse, he must allege it; and an alienation of the wife's affections may occur by and through other means than seduction. But this is far from saying that such alienation may not occur by means of seduction. The common-law form of declaration for criminal conversation includes an allegation that "thereby the affection of said (wife) was then and there alienated and destroyed;" and in 2 Chit. Pl. (13th Ed.) 642, where this form is given, it is said in the note: "When it may be doubtful whether the criminal conversation can be proved, and the defendant has been guilty of enticing away or harboring the wife, it may be advisable to add counts for such injuries." The counts were properly joined.

2. To prove the marriage, plaintiff produced an original marriage certificate, and, after proving the signature of the clergyman, the same was received in evidence. He also offered a certified copy of the registry of marriage. It was also permitted the plaintiff to show that the parties lived together as husband and wife. This testimony was admitted by the court for the purpose of showing harmonious relations between the parties prior to the alleged tortious conduct by the defendant. The proof of the identity of the parties was clear and uncontradicted. This being so, the statute provides that the marriage cer-

tificate or a certified copy of the registry of marriage shall be presumptive evidence of the fact of marriage. 2 How. Stat. § 6222; *People* v. *Isham*, 109 Mich. 72; *People* v. *Imes*, 110 Mich. 250; 1 Am. & Eng. Enc. Law (2d Ed.), 756. There was no error, therefore, in treating this uncontradicted fact as established; and, even if the jury may have considered the testimony of cohabitation as tending to prove marriage in fact, it could not have harmed the defendant, as the fact was proven by other competent and uncontroverted evidence.

3. The evidence offered to prove adulterous intercourse consisted of the testimony of various witnesses, neighbors of plaintiff, which testimony shows that, during the period covered by the declaration, plaintiff was a railroad conductor on the Fayette Branch of the Michigan Southern Railroad, and that his headquarters were at Fayette, Ohio, and consequently he was away from home almost constantly; that defendant was seen to visit the plaintiff's house frequently, in the daytime and in the evening; that he was seen at various places about the city, with plaintiff's wife; that he sometimes remained with her at unseemly hours; and, in addition, 42 letters, some of which contain suggestions for meetings couched in language which plainly implies an immoral purpose, and others of which, construed in connection with a previous assignation, tend strongly to show that illicit relations had been sustained. It is contended that these letters were not proof of the fact of adultery. It is said that the letters could, in any event, support no more than an inference of defendant's guilty disposition, and were introduced and admitted in evidence not alone for this purpose, but to furnish the jury a basis upon which to found a suspicion of a like disposition and opportunity upon the part of the wife. The fault in this contention lies in the assumption that the letters show no more than an inclination and seeking of opportunity on the part of the defendant. We think, on the other hand, that certain of the letters, and particu-

larly that of June 11, 1889, might well be construed by the jury, when taken in connection with the previous letters of June 6th and 7th, as amounting to an admission of illicit relations; and we know of no rule peculiar to this class of cases which excludes admissions made by the party to the record.

It is further contended that the receipt of these letters by the wife of plaintiff was not sufficiently shown by competent evidence. The letters and envelopes in which they were apparently inclosed were produced, and the son of plaintiff testified that this package of letters was presented by plaintiff to defendant in witness' presence, and that defendant acknowledged having written them, and produced a package of letters written by plaintiff's wife, and insisted that the correspondence was entirely a friendly one. This testimony was wholly uncontradicted, but was supported by other testimony, showing the letters to be in the handwriting of defendant. We are unable to see how the rulings relating to the proof of the genuineness of the letters, or their receipt by plaintiff's wife, could have damaged defendant's case, if not technically correct, as the writing of them was not only not in dispute, but was admitted by defendant, as appears by the uncontradicted testimony; and, aside from these admissions of defendant, the letters appear to have been addressed to plaintiff's wife at her street and number, and to have been postmarked, and show on their face that they belong to a connected correspondence; and defendant's admissions to the plaintiff, testified to by plaintiff's son, cover the same ground.

4. After the commencement of this suit, plaintiff instituted proceedings against his wife for divorce, and obtained a decree. These proceedings were offered in evidence, and were received, subject to the objection that they were incompetent, irrelevant, and immaterial, and that no proceedings for a divorce, nor the divorce itself, is any evidence against the defendant. The record, includ-

ing the bill of complaint, was received and read in evidence. In the bill of complaint, sworn to by plaintiff, he charged that his wife, in his absence and without his knowledge, carried on an extensive personal, friendly, and affectionate correspondence with other men, and associated with another man, without plaintiff's knowledge, on the most friendly and affectionate terms, to the public shame and disgrace of plaintiff. Plaintiff contends that these proceedings were admissible for the purpose of showing the *status* of the parties. We think it was competent for the plaintiff to show the fact of divorce, for the purpose of negativing any claim that there had been, up to that time, a reconciliation between the parties, plaintiff and his wife. But the bill of complaint, which was an *ex parte* statement of the plaintiff, not himself a competent witness, should not have been read in evidence. Much less should the jury have been permitted to consider it as substantive proof of the facts stated. See *Dalton* v. *Dregge*, 99 Mich. 250; *Fletcher* v. *Railway Co.*, 109 Mich. 363.

5. Defendant, at the close of the trial, presented a request for a special finding, which read as follows: "Do you find from the evidence that Mrs. Mead and the defendant were ever in plaintiff's house together when no one else was present?" The court submitted the request, after striking out the words "when no one else was present." We need not determine whether it was the duty of the court, under the evidence in the case, to submit this request. It is clear that, if it was to be submitted to the jury at all, it should have been submitted in the form presented, as the evidence upon the subject of the meetings between Randall and plaintiff's wife at plaintiff's house was directed to clandestine meetings; and, while the evidence may not have been direct to show that no other person was present in the house on any of the occasions testified to, yet the circumstances were such as would enable the jury to draw an inference

on that subject.    We refer to this question, as it may be presented on another trial, and in fairness to the defendant.

We do not think the other questions in the case require discussion.

For the error pointed out, the judgment will be reversed, and a new trial ordered.

The other Justices concurred.