SIDNEY BALICK, Administrator of the Estate of Charlie Brown, Plaintiff, v. EARL L. EMERSON, JR., Defendant.

(*March* 2, 1960.)

TERRY, P. J., sitting.

*John M. Bader* and *John Biggs, III*, for the Plaintiff.

*John P. Sinclair* (of the firm of Berl, Potter and Anderson) for the Defendant.

Superior Court for New Castle County, No. 244, Civil Action, 1959.

TERRY, P. J.:

This is an action for the wrongful death of a pedestrian, Charlie Brown, a single man, who was struck by an automobile driven by the defendant, Earl L. Emerson, Jr., at approximately 11:30 P.M. on the night of August 7, 1956.

The uncontradicted evidence, as disclosed by the pertinent papers in this case, is, in substance, as follows:

That the defendant was driving north in the northbound lane of Route 896, near Middletown, Delaware, at approximately

45 miles per hour (within the legal speed limit); that as he started to round a gradual curve near the Home Sweet Home Farm, he met two approaching vehicles and dimmed his lights; that after passing these vehicles and before he had a chance to adjust his eyesight, he saw an object about 60 feet ahead of him on the highway on the northbound lane, located approximately two to three feet inside of the white line on that lane; that upon discovering the object upon the highway, he immediately applied his brakes and swerved to the right, and that the right front wheel of his automobile had reached the shoulder of the road at the time of impact with the deceased; that after the application of his brakes, he traveled approximately 86 feet before his vehicle came to a stop; that the force of the impact broke the deceased's neck, and he was fatally injured; that head toward the center of the highway, approximately 15 feet in the deceased's body ended up lying on the concrete, with his front of the defendant's automobile; that the left portion of the hood and fender of the defendant's automobile clearly showed the impression of the impact.

That the deceased was wearing a dark maroon shirt and a pair of blue jean overalls at the time of the accident, and he was not carrying a light or lantern, or reflector; that a test of the deceased's blood made by a chemist revealed 0.190 per cent by weight of alcohol therein.

That one Edward R. Connors, Jr., was travelling north on the same highway at about 10:55 P.M. the same night, and that he observed a colored man standing on or near the center line of the highway, approximately 100 feet north of the Home Sweet Home Farm; that the man was dressed in dark clothing; that he was not carrying a light or reflector of any kind; that he was staggering and appeared to be thumbing his way toward Middletown; that Connors slowed down to about 30 miles per hour and drove around the man; that when he returned along the same road about 11:45 P.M. he observed police cars gathered near the area where he had seen the colored man as previously

indicated; that at that time there was a man lying on the north-bound lane who appeared to be the man that he had observed earlier in the road.

This action is predicated upon the provisions of paragraph (b), Section 3704, Title 10 of the Delaware Code.

"(b) Whenever death is occasioned by unlawful violence or neglect and no suit is brought by the party injured to recover damages during his or her life, the widow or widower of any such deceased person, or, if there is no widow or widower, the personal representatives, may maintain an action for and recover damages for the death and loss thus occasioned."

The allegations in the plaintiff's complaint charge the defendant with the following common law violations in respect to the manner in which he was operating his automobile and contend that said violations on the defendant's part constituted the proximate cause of the collision resulting in Brown's death:

"1.   That he failed to keep a proper lookout.

"2.   That he drove at an excessive speed.

"3.   That he failed to keep his automobile under proper control.

"4.   That Charlie Brown was in a position of danger from which he could not extricate himself, which position of danger the defendant had knowledge or should have had knowledge."

The defendant has charged the deceased with the following violations:

"1.   He failed to keep a proper lookout.

"2.   He violated the provisions of Section 4175(a), Title 21 of the Delaware Code.

"Section 4175(a)

"No pedestrian shall walk upon any improved or hard-surfaced highway in this State that is used for motor vehicle

traffic beyond the corporate limits of any city or town, without carrying a lighted lantern, lighted flash-light or other similar light or reflector type device during the period of time from one-half hour after sunset to one-half hour before sunrise and that at any other time when there is not sufficient light to render clearly visible any person or vehicle on the highway."

"3. He violated the provisions of Section 4171, Title 21 of the Delaware Code."

"Whoever walks or is upon a public highway of this State while under the influence of intoxicating liquor * * * shall, for the first offense, be fined * * *."

The defendant has filed a motion for summary judgment under Rule 56 of this Court, *Del. C. Ann.*, on the ground that there being no genuine issue of a material fact in dispute, he is entitled to a judgment as a matter of law.

■ The presence of the deceased upon the highway in violation of Section 4175(a) and Section 4171 of Title 21 of the *Delaware Code* constituted contributory negligence on his part which would justify the entry of a summary judgment in favor of the defendant unless the defendant's negligence, if any existed, intervened and became the effective or proximate cause of the collision (Last Clear Chance Doctrine). *McLenaghan v. Billow, D. C.*, 161 *F. Supp.* 835.

■ The record in the present case does not disclose a genuine issue as to any material fact. The only question left for determination concerns the applicability of the doctrine of the Last Clear Chance. The doctrine is but an exception to the rule that contributory negligence bars recovery.

The Supreme Court of this State, in the case of *Lord v. Poore*, 9 *Terry* 595, 108 *A.* 2d 366, 369, stated that the doctrine applied (*a*) to the case of a plaintiff who has negligently placed himself in a position of helpless peril, that is, a position from

which he is unable physically to extricate himself just before the accident. In such case, the defendant is liable if either he saw the plaintiff or by the exercise of reasonable care could have seen him in time to have avoided him. (*b*) It is applied to a case of a negligently inattentive plaintiff, that is, a plaintiff who has negligently placed himself in a dangerous position, but who is able, at any time before the accident, to extricate himself from his position of danger. In this situation, recovery should be denied to the negligently inattentive plaintiff unless the evidence shows that the defendant knew of the plaintiff's situation and had reason to believe that he was inattentive and unlikely to discover his danger in time to avoid him.

We will assume *arguendo* that by reason of Connors' statements concerning the condition of the deceased at 10:55 P.M., together with the blood test of 0.190 per cent by weight of alcohol in the deceased's blood that the deceased was *prima facie* guilty of being under the influence of intoxicating liquor, under the provisions of Section 3507 of Title 11 of the Delaware Code.

Section 3507, Title 11

"\* \* \* Evidence that there was at the time 15/100 of one per centum, or more, by weight of alcohol in his blood, may be admitted as *prima facie* evidence that the defendant was under the influence of intoxicating liquor within the meaning of the statutory definition of the offense."

The plaintiff contends, under No. 4 of his specifications of negligence, that although the deceased negligently placed himself in his position of danger upon the highway, he was under the influence of intoxicating liquor to such an extent that he was insensible to the dangerous circumstances concerning his position and thus was unable to extricate himself therefrom. Thus, it is argued, the defendant in a situation such as this is liable if he saw the deceased, or by the exercise of reasonable care could have seen him in time to have avoided him.

It must be conceded in the present case that the opportunity was available to the deceased to extricate himself from his position of danger upon the highway.

Even though a person be known to be under the influence of intoxicating liquor, ordinarily, he will take some measure to preserve himself from injury unless, of course, he be physically incapacitated. It cannot be said, generally, that men, when drinking, are utterly reckless to their own safety or insensible to their duty to protect themselves.

The first function of the Court in applying the doctrine of the Last Clear Chance is to determine whether or not the party seeking to invoke the doctrine was physically able to have extricated himself from his position of danger, in which he had negligently placed himself, in time to have avoided harm.

If the deceased in the present case was not physically able to have extricated himself from his position of danger, then Rule (a) under the doctrine as indicated in the case of *Lord v. Poore, supra,* is applied. On the other hand, if the deceased was physically able to have extricated himself from his position of danger and thus avoided harm, then Rule (b) is applied.

As previously indicated, the plaintiff, under his specification of negligence No. 4, urges that his case falls within Rule (a), that is, that the deceased was so incapacitated due to his over-indulgence in intoxicating liquor, that he was physically unable to have extricated himself from his position of danger. The burden of establishing the deceased's inability to have physically extricated himself from his position of danger, because of over-indulgence in alcoholic liquor, rests squarely upon the plaintiff. A review of the evidence before me does not establish the degree of intoxication of the deceased as the same relates to his inability to have physically extricated himself from his position of danger. The conclusion that he was physically unable to do so because of being intoxicated, would of necessity have to be predicated solely upon speculation and

conjecture, which would not be of sufficient import to sustain the plaintiff's position in this respect.

In respect to the deceased, it is my conclusion that his case falls within Rule (b), supra, as I consider him to have been a negligent, inattentive person, who placed himself in a position of danger, and in the absence of adequate evidence to the contrary, it must be assumed that he was physically able at any time before the accident to have extricated himself from his dangerous position.

In respect to the defendant, it is my conclusion that upon his discovery of the deceased's position on the highway, he had no reason to know or believe that the deceased was under the influence of intoxicating liquor, or inattentive and unlikely to discover his dangerous position in time to avoid harm. The plain fact, as disclosed by the evidence, is that the defendant did not have the opportunity to determine that the deceased was inattentive until too late to avoid hitting him, notwithstanding his attempt so to do.

The defendant did not have a Last Clear Chance to avoid the accident.

The defendant's motion for summary judgment is granted.

An order will be entered upon motion.